548 P.2d 632 (1976)
STATE of Hawaii, Plaintiff-Appellee,
v.
Samuel KAMAE, III, Defendant-Appellant.
No. 5559.
Supreme Court of Hawaii.
March 22, 1976.
*633 Mark M. Nomura, Deputy Public Defender, Honolulu (Donald K. Tsukiyama, Public Defender, Honolulu, of counsel), for defendant-appellant.
Adrienne Sepaniak, Deputy Pros. Atty., Honolulu (Maurice Sapienza, Pros. Atty., Honolulu, of counsel), for plaintiff-appellee.
Before RICHARDSON, C.J., and KOBAYASHI, OGATA, MENOR and KIDWELL, JJ.
OGATA, Justice.
These two criminal cases, identified in the records of the court below as Cr. No. 45581, and Cr. No. 45583, have been consolidated for the purpose of appeal and are before us for the second time. In the first appeal we allowed Samuel Kamae, III, defendant-appellant (hereinafter appellant), to appeal each of these cases in forma pauperis on their merits. State v. Kamae, 56 Haw. 32, 526 P.2d 1200 (1974). We are now concerned with whether the court below accorded to the appellant due process during the proceedings when he was imposed extended term sentences.
In Cr. No. 45581, the record shows that the appellant was charged in a three-count indictment with the offense of robbery in the first degree in violation of section 708-840(1)(b)(ii) of the Hawaii Revised Statutes, the offense of kidnapping in violation of section 707-720(1)(c) of the Hawaii Revised Statutes, and the offense of sexual abuse in the first degree in violation of section 707-736(1)(a) of the Hawaii Revised Statutes. In Cr. No. 45583, the record shows that the appellant was charged in the indictment with the offense of attempted murder in violation of sections 705-500, and 707-701 of the Hawaii Revised Statutes. Although the indictments do make reference to sections of the Hawaii Revised Statutes (HRS) there are no sections so designated in the HRS or its supplements covering robbery in the first degree, kidnapping, sexual abuse in the first degree or attempted murder. The indictments must therefore refer to the Hawaii Penal Code, hereinafter referred to as code, which was enacted by Act 9, S.L.H. 1972, and became effective as of January 1, 1973, more than two months before the alleged offenses occurred. This code has not yet been printed in the supplements to HRS (see Vol. 7 HRS, Supp. 1975, p. 393) so all references to the code will be to section *634 1, Act 9, S.L.H. 1972, and to the sections contained therein.
On May 11, 1973, appellant was arraigned and pleas of not guilty were entered to all of these charges.
On August 2, 1973, appellant appeared in the court below and requested that he may be allowed to withdraw his pleas of not guilty entered as to count one, robbery in the first degree, in Cr. No. 45581, and entered as to the charge of attempted murder in Cr. No. 45583. After the court granted appellant's request he entered a plea of guilty to the charge of robbery in the first degree in Cr. No. 45581; and he also entered a plea of guilty to a charge of assault in the first degree in Cr. No. 45583, the state having agreed that appellant could plead guilty to this lesser included offense to the charge contained therein of attempted murder.
In the same proceedings mentioned above, counsel for appellant informed the court that the other two counts contained in the indictment in Cr. No. 45581 were to be dismissed by the state, along with another pending criminal action against appellant, Cr. No. 45582, larceny in the first degree. The prosecutor indicated that he had so agreed.
Before the proceedings concluded, appellant attempted to have the court sentence him immediately based upon the two convictions, and stated that he would waive a presentence diagnosis and report by the probation office. The court, however, refused to sentence the appellant to the ordinary maximum terms of imprisonment and revealed that it should consider the imposition of extended terms of imprisonment. Appellant then requested that a presentence diagnosis and report be furnished.
A hearing was held on September 19, 1973, on the imposition of the extended term sentences under the relevant sections of the code.[1] In that hearing the sole and only evidence presented by the state to prove the existence of the ground justifying imposition of extended term sentences was the presentence diagnosis and report prepared by the probation office for Cr. No. 45581. Such a report was received in evidence, notwithstanding the objection by appellant. That report showed appellant's alleged adult criminal record on pages 6, 7 and 8. It also indicated that appellant had been referred to the juvenile court about twenty times since he was nine years of age and that, as a juvenile, he was incarcerated at the Hawaii Youth Correctional Facility.
On this record the court made a finding required by § 662(4) of the code that appellant is a multiple offender whose criminality was so extensive that a sentence of imprisonment for an extended term is warranted. After making that finding, the court below sentenced the appellant to life imprisonment based upon his robbery first degree conviction and to 20 years imprisonment based upon his assault in the first degree conviction, both sentences to be served concurrently.
Our code provides that robbery in the first degree is a class A felony[2] and that assault in the first degree is a class B felony.[3] The code further provides in § 660 as follows:
"Sec. 660  Sentence of imprisonment for felony; ordinary terms.

A person who has been convicted of a felony may be sentenced to an indeterminate term of imprisonment. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:
(1) For a class A felony  20 years;
(2) For a class B felony  10 years;
and
(3) For a class C felony  5 years.
The minimum length of imprisonment shall be determined by the board of paroles *635 and pardons in accordance with section 669."
Under the provisions of the code[4] a person who has been convicted of a class A felony may be sentenced to an extended term of imprisonment for life, and a person who has been convicted of a class B felony may be sentenced to an extended term of imprisonment for 20 years. We quote the precise language of § 662 of the code under which the appellant was found to be a multiple offender:
"Sec. 662  Criteria for sentence of extended term of imprisonment for felony.

The court may sentence a person who has been convicted of a felony to an extended term of imprisonment if it finds one or more of the grounds specified in this section. The finding of the court shall be incorporated in the record.
(1) Persistent offender. The defendant is a persistent offender whose commitment for an extended term is necessary for protection of the public. The court shall not make such a finding unless the defendant is 22 years of age or older and has previously been convicted of two felonies committed at different times when he was 18 years of age or older.
(2) Professional criminal. The defendant is a professional criminal whose commitment for an extended term is necessary for protection of the public. The court shall not make such a finding unless the defendant is 22 years of age or older and:
(a) The circumstances of the crime show that the defendant has knowingly devoted himself to criminal activity as a major source of livelihood; or
(b) The defendant has substantial income or resources not explained to be derived from a source other than criminal activity.
(3) Dangerous person. The defendant is a dangerous person whose commitment for an extended term is necessary for protection of the public. The court shall not make such a finding unless the defendant has been subjected to a psychiatric examination resulting in the conclusion that his criminal conduct has been characterized by compulsive, aggressive behavior with heedless indifference to consequences, and that such condition makes him a serious danger to others.
(4) Multiple offender. The defendant is a multiple offender whose criminality was so extensive that a sentence of imprisonment for an extended term is warranted. The court shall not make such a finding unless:
(a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or
(b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively would equal or exceed in length the maximum of the extended term imposed, or would equal or exceed 40 years if the extended term imposed is for a class A felony."
Initially, the hearing in the court below on the extended terms was predicated on subsection (1) of § 662 of the code. The state attempted to show that appellant was a persistent offender as specified in that subsection, but having apparently failed, the hearing proceeded under subsection (4)(a), which encompasses a multiple offender. This subsection defines a multiple offender as a person whose criminality was so extensive that a sentence of imprisonment for an extended term is warranted. Subsection (4)(a) requires the sentencing court to make a preliminary finding that the defendant is being sentenced for two or more felonies, or is presently serving a prison term for a felony, prior to making the finding that such a person is a multiple offender possessing the requisite extensive *636 criminality justifying the imposition of an extended term sentence. It is not disputed that appellant was before the court to be sentenced for two felonies to which he had pleaded guilty. There remained then the issue of whether the appellant is a multiple offender whose criminality was so extensive that a sentence of imprisonment for an extended term is warranted.
Appellant contends that the hearing on extended term sentences is an independent criminal proceeding and that the state must establish that appellant is a multiple offender beyond a reasonable doubt. We agree that such a hearing is necessary, where, as here, the appellant by his denial of his status as a recidivist has thrust upon the state the obligation to show that appellant's past conduct in criminal activities was so extensive that an extended term sentence should be imposed. As we noted in State v. Kamae, supra, 56 Haw. 32, 526 P.2d 1200 (1974), the hearing to impose an extended term sentence should not be compared to "the routine sentence of a trial judge who is vested with wide discretion in the sources and types of evidence which may be utilized by him in the proper disposition of convicted offenders." While § 664[5] of the code requires that a hearing be held by the court so that the ground for the extended term may be established at such a hearing, it is silent on whether or not it is an independent proceeding.
We are persuaded to adopt the reasoning and decision of the United States court of appeals for the third circuit in United States ex rel. Gerchman v. Maroney, 355 F.2d 302 (1966), on the nature and scope of the hearing. In that case the court had occasion to observe the sentencing procedure under the Barr-Walker Act,[6] and the court there stated:
"... It is a separate criminal proceeding which may be invoked after conviction of one of the specified crimes. Petitioner therefore was entitled to a full judicial hearing before the magnified sentence was imposed. At such a hearing the requirements of due process cannot be satisfied by partial or niggardly procedural protections. A defendant in such a proceeding is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial, including the right to confront and cross-examine the witnesses against him. Pointer v. State of Texas, supra; Douglas v. State of Alabama, supra." 355 F.2d at 312.
The above quotation from the Gerchman case was cited with approval by the United States Supreme Court in Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), which reversed on procedural due process the one day to life sentence rendered under the Colorado Sex Offenders Act which is substantially similar to the Barr-Walker Act. In Specht, the court, speaking through Mr. Justice Douglas, further remarked: "Under Colorado's criminal procedure, here challenged, the invocation of the Sex Offenders Act means the making of a new charge leading to criminal punishment. The case is not unlike those under recidivist statutes where an habitual criminal issue is `a distinct issue' (Graham v. West Virginia, 224 U.S. *637 616, 625, 32 S.Ct. 583, 56 L.Ed. 917) on which a defendant `must receive reasonable notice and an opportunity to be heard.'" 386 U.S. at 610, 87 S.Ct. at 1213. Similarly, the institution by the state of a proceeding under § 664 of the code to impose upon a defendant an extended term of imprisonment under our statute must be considered to be "the making of a new charge leading to criminal punishment."
We believe that § 664 of the code should be construed in harmony with the requirements of due process and that the hearing provided therein is a separate criminal proceeding apart from the trial of the underlying substantive offense. Specht v. Patterson, supra; United States ex rel. Gerchman v. Maroney, supra. See also Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954).
As this is a criminal proceeding we must also hold that all relevant issues should be established by the state beyond a reasonable doubt. In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Specht v. Patterson, supra; Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); United States ex rel. Gerchman v. Maroney, supra; In Re Andrews, Mass., 334 N.E.2d 15 (1975); People v. Burnick, 14 Cal.3d 306, 121 Cal. Rptr. 488, 535 P.2d 352 (1975); State v. Cooper, 161 Mont. 85, 504 P.2d 978 (1972). Thus, in In Re Winship, supra, 397 U.S. at pages 363-364, 90 S.Ct. at page 1071, it was stated: "The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt." It was also stated in Speiser v. Randall, supra, 357 U.S. at pages 525-526, 78 S.Ct. at page 1342, that: "There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value  as a criminal defendant his liberty  this margin of error is reduced as to him by the process of placing on the other party the burden of producing a sufficiency of proof in the first instance, and of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt. Due process commands that no man shall lose his liberty unless the Government has borne the burden of producing the evidence and convincing the factfinder of his guilt."
Therefore, while appellant was convicted of robbery in the first degree and assault in the first degree and could have been sentenced to the ordinary term of sentence in each case, before the sentencing court could impose an extended term of sentence, it was necessary for the court to find beyond a reasonable doubt after a hearing that appellant was a multiple offender whose criminality was so extensive that an extended term of imprisonment is warranted. Appellant was "entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial." Specht v. Patterson, supra; United States ex rel. Gerchman v. Maroney, supra; In Re Andrews, supra; People v. Burnick, supra.
Appellant's final contention is that the state's proof of his recidivism was insufficient because it consisted solely of the presentence report which in substance is hearsay; also that the record of convictions contained in the report was inadmissible in that it does not comply with the best evidence rule.
The definition of former conviction is set forth in § 666(1) of the code as follows: "An adjudication by a court of competent *638 jurisdiction that the defendant committed a crime constitutes a conviction for the purpose of sections 662 and 665, although sentence or the execution thereof was suspended, provided that the time to appeal has expired and that the defendant was not pardoned on the ground of innocence." Subsection (2) of § 666 of the code provides that: "Prior conviction may be proved by any evidence, including fingerprint records made in connection with arrest, conviction or imprisonment... ." The code does not expressly permit proof of a prior conviction by hearsay statements in a presentence report.
Admittedly, the code requires that a presentence report be furnished to the court[7] and that the court give it due consideration before the disposition either of an offender convicted of a felony, or of an offender less than twenty two years of age convicted of any crime. In an ordinary term sentencing proceeding, a sentencing judge customarily relies upon information furnished to him in a presentence diagnosis and report. State v. Nobriga, 56 Haw. 75, 527 P.2d 1269 (1974); Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). In State v. Nobriga, supra, we were faced with whether a sentencing judge may consider an adult offender's juvenile record contained in a presentence diagnosis and report. We there held that in a sentencing process, where the judge is no longer concerned with determining factual issues on guilt or innocence, he may consider such relevant information, including juvenile court record which is contained in a presentence report. Likewise in Williams v. New York, supra, the court held that a sentencing court may acquire information about a defendant from any source, including any data contained in a presentence report, and utilize the same in the sentencing of a defendant without violating due process. But we observe that State v. Nobriga, supra, and Williams v. New York, supra, were concerned with purely ordinary sentencing after a defendant had been convicted of the crime charged in the indictment. Neither of these cases considered the imposition of an extended term of sentence involving the determination of an additional issue.
A substantial portion of the contents of the presentence report was obviously incompetent hearsay. United States ex rel. Gerchman v. Maroney, supra; Lawson v. State, 486 P.2d 759 (Okla.Cr. 1971); Jones v. State, 477 P.2d 85 (Okla.Cr. 1970); State v. Taylor, 198 Kan. 290, 424 P.2d 612 (1972); People v. Bryson, 172 Cal. App.2d 536, 342 P.2d 274 (1959). A presentence report may also be objectionable because it may contain conclusions of the probation officer regarding the appellant. See Bravo v. Craven, 319 F. Supp. 154 (D.C.C.D.Cal. 1969). Also, the report which outlined appellant's alleged criminal record as an adult included two misdemeanors which had been nolle prosequied as well as a pending larceny charge and the two felonies mentioned in Cr. No. 45581, all which were to be dismissed. It is also interesting to note that State v. Piri, 295 Minn. 247, 204 N.W.2d 120 (1973), cited by the state to support its contention that the hearing on an extended term sentence is not an independent proceeding requiring that it prove the ground or grounds of such extended term sentence beyond a reasonable doubt, clearly supports appellant's view that a presentence report, in the absence of stipulation, cannot be used to prove prior convictions.[8] We conclude *639 that the ordinary rules of evidence should apply to an extended term sentence hearing and the court erred when it admitted into evidence the presentence report over the objection of the appellant. United States ex rel. Gerchman v. Maroney, supra; Jones v. State, supra; People v. Bryson, supra.
Moreover, even assuming the presentence report to be admissible, the record in each case is nevertheless glaringly deficient as it does not show that appellant was represented by counsel during any of the alleged prior offenses of which he was convicted, or that he intelligently and voluntarily waived his constitutional right to counsel. "To permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment for another offense (citation omitted) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right." Burgett v. Texas, 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967). See also Wilburn v. State, 253 Ark. 608, 487 S.W.2d 600 (1972); State v. Paul, 8 Wash. App. 666, 508 P.2d 1033 (1973). We have also agreed with the precept stated in Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962), that "[p]resuming waiver [of counsel] from a silent record is impermissible." Carvalho v. Olim, 55 Haw. 336, 519 P.2d 892 (1974); Wong v. Among, 52 Haw. 420, 477 P.2d 630 (1970).
Accordingly, we vacate the sentences rendered in these cases and remand the same for further proceedings not inconsistent with this opinion.
NOTES
[1] These sections of the code are §§ 661, 662, 664, 665, and 666.
[2] See § 840(3) of the code.
[3] See § 710(2) of the code.
[4] See § 661 of the code.
[5] Section 664 of the code reads as follows:

"Sec. 664  Procedure on imposing sentence of imprisonment for an extended term.
The court shall not impose a sentence of imprisonment for an extended term unless the ground therefor has been established at a hearing after the conviction of the defendant and on written notice to him of the ground proposed. Subject to the provisions of section 604, the defendant shall have the right to hear and controvert the evidence against him and to offer evidence upon the issue."
[6] Subsequently in Commonwealth v. Dooley, 209 Pa.Super. 519, 232 A.2d 45 (1967), the Barr-Walker Act was declared unconstitutional because it was deficient in due process.
[7] See § 601 of the code.
[8] In this case the court said:

"Defendant had the simple remedy of placing into issue the matters he now raises in this court. He merely had to challenge the fact of the prior convictions or the validity of the presentence report. If this prerequisite had been fulfilled, the court would have had to adjourn the hearing and require the prosecution to produce evidence to establish ... the validity of the prior convictions, the fact that the defendant was the person involved in the prior proceedings, and that said crimes did constitute felonies under our statute." 295 Minn. at 253-54, 204 N.W.2d at 124.